IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIW HOLDINGS LLC and PUFF LABS, LLC,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>HOTBOX FARMS LLC and DOES 1-10,<br><br>　　　　　Defendants. | Case No.: 3:24-cv-00126-AN<br><br><br>OPINION AND ORDER |

　　　　　Plaintiffs TIW Holdings LLC ("TIW") and Puff Labs, LLC ("Puff Labs") brought this action against defendants Hotbox Farms LLC ("Hotbox Farms" or "defendant") and Does 1-10 alleging fraudulent federal trademark registrations in violation of the Lanham Act, 15 U.S.C. § 1120, requesting cancellation of federal trademark registrations pursuant to 15 U.S.C. § 1119 and seeking a declaratory judgment that its marks do not infringe on any of Hotbox Farm's purported marks. Hotbox Farms filed counterclaims alleging federal trademark infringement in violation of 15 U.S.C. § 1114(1), federal unfair competition in violation of 15 U.S.C. § 1125(a), common law trademark infringement, and common law unfair competition, and requests an order directing the United States Patent and Trademark Office ("USPTO") to rectify the register pursuant to 15 U.S.C. § 1119.

　　　　　Plaintiffs move to dismiss the counterclaims. After reviewing the motion, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated herein, the motion to dismiss is DENIED.

**LEGAL STANDARD**

　　　　　To survive a Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed R. Civ. P. 12(b)(6). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Bare assertions that amount to mere "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

In ruling on an FRCP (12)(b)(6) motion to dismiss, a court may consider only "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may also consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.*

## BACKGROUND

Plaintiffs sell electronic vaporizers and e-liquid products. Compl., ECF [1], ¶¶ 6-7, 11. Puff Labs is a wholesaler, distributor, and retailer that licenses products from TIW. Answer & Countercls., ECF [34], ¶ 19. They allege that that they have used three "Hotbox Farms" marks (the "Marks"), "Hotbox," "Hotbox 7500," and "Puff Hotbox 7500," since June 2022. *Id.* ¶ 11. TIW filed three pending trademark applications for the Marks on August 17, 2022. *Id.* ¶ 12. The intended goods and services include electronic cigarettes and liquids for use with them, dietary supplements for people and animals, and beauty products, lotions, and creams. *Id.*

Hotbox Farms is a marijuana business operating in Ontario, Oregon, that sells "Oregon-legal cannabis products" and non-cannabis products. Compl. ¶¶ 1, 8; Answer & Countercls. ¶¶ 7-8. Hotbox Farms owns trademark registration no. 7,062,602 (the "'602 Registration") for the trademark "Hotbox Farms" with an intent to use application filing date of October 28, 2020, for use with goods including stickers, insulating sleeve holders for beverage cups, hats, shirts, sweatshirts, buttons, and lighters for smokers. Compl. ¶ 15; Answer & Countercls. ¶ 11.

Plaintiffs allege irregularities in defendant's trademark registration process, including filing

statement of use dates that precede the intent to use dates and photographs of specimens that say "Hotbox Farms Eastern Oregon" and do not match the registered "Hotbox Farms." *Id.* ¶ 19. Plaintiffs allege that Hotbox Farms did not have a bona fide intention to use the '602 Registration in connection with every good listed in the application or did not provide retail services for those goods at the time of application. *Id.* ¶¶ 22-23. More specifically, plaintiffs allege that Hotbox Farms was not the source of lighters it sold, but merely placed a sticker with an image of a marijuana leaf and the words "Hotbox Farms Eastern Oregon" onto third-party BIC brand lighters. *Id.* ¶ 23.

On December 19, 2022, the USPTO issued a Nonfinal Office Action refusing registration on the '602 Registration because the "specimens of record is merely a decorative or ornamental feature of the goods and, thus, does not function as a trademark to indicate the source of applicant's goods and to identify and distinguish them from others" for the stickers, sleeve holders, buttons, and lighters. *Id.* ¶¶ 24-25. With regard to the hats, shirts, and sweatshirts, the USPTO additionally noted in its Nonfinal Office Action that while the applied-for Hotbox Farms mark was located on the outside of the clothes, the inside tags showed a different mark, indicating a decorative, rather than source-identifying, function for the mark. *Id.* ¶ 26. The USPTO ultimately issued the '602 Registration on May 23, 2023. *See* Compl., Ex 1.

Plaintiffs allege that defendants willfully withheld information in their response to the USPTO because they failed to state that their primary service is selling marijuana, not the products listed in the '602 Registration, and that defendants did so with the knowledge that because marijuana is a controlled substance, marijuana and marijuana paraphernalia could not qualify for registration. Compl. ¶¶ 29-30. Plaintiffs argue that, as a result, the '602 Registration was fraudulently obtained and its use harms plaintiffs' business. *Id.* ¶¶ 33-39.

In its counterclaims, defendant maintains that it is the lawful holder of the "Hotbox Farms" mark based on its '602 Registration and its continuous use of that mark in commerce beginning between 2016 through 2018, depending on the product. Answer & Countercls. ¶¶ 12-13. Defendant alleges that plaintiffs began using the Marks after defendant's registration, that plaintiffs' goods are similar to defendant's, and that this causes a risk of confusion. Defendant sent a cease-and-desist letter to plaintiffs

on September 8, 2023. *Id.*; Compl. ¶ 2, Ex. A; Answer & Countercls. ¶ 29.

## DISCUSSION

Plaintiffs move to dismiss defendant's counterclaims. Mot. to Dismiss, ECF [44]. Plaintiffs argue that defendant does not have a valid federal trademark registration, that it fails to plausibly plead a likelihood of confusion, and that, as a result, its claims for federal and common law trademark infringement, federal and common law unfair competition, and request to rectify the USPTO register fail as a matter of law.

**A.      Relevant Law**

Federal trademark infringement occurs when a person, without consent of the trademark registrant, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). The test for federal and Oregon unfair competition and trademark infringement is the same: a plaintiff must show "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012).

**B.      Validity of Trademark Registration**

"To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). A trademark registration is considered "prima facie evidence" of ownership and validity of a trademark. *Vidal v. Elster*, 602 U.S. 286, 291 (2024). Defendant has established *prima facie* evidence of the ownership and validity of the "Hotbox Farms" trademark through its registration. *Prima facie* evidence of the ownership and validity of a trademark can be rebutted by "by showing that the registrant had not established valid ownership rights in the mark at the time of registration." *Sengoku Works Ltd.*, 96 F.3d at 1220.

The parties do not dispute that defendant holds the '602 Registration. Plaintiffs argue, however, that defendant did not validly acquire ownership of the trademark or, in the alternative, that the ownership should be considered *void ab initio*. Mot. to Dismiss 6.

Plaintiffs first argue that despite the *prima facie* evidence of registration, defendant failed to use the mark in commerce. The Lanham Act defines "use in commerce" as " the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. A mark is deemed to be used in commerce when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale" and the goods are sold or transported in commerce. *Id*. Mere token use, that is, "'[m]ere adoption of a mark without bona fide use, in an attempt to reserve it for the future,'" is not sufficient to establish *bona fide* use in commerce. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001) (quoting *Signature Guardian Sys., Inc. v. Lee et al.*, 209 U.S.P.Q. (BNA) 81, 87 (T.T.A.B. 1980).

Defendant pleads in its counterclaims that it owns and uses the "Hotbox Farms" mark for stickers, insulating sleeve holders for beverage cups, hats, shirts, sweatshirts, buttons, lighters for smokers, and retail store services. Answer & Countercls. ¶ 11. It alleges that its business includes both marijuana and non-marijuana products, and that non-marijuana products are sold in Oregon to customers that include Idaho residents who travel over the nearby border. *Id*. ¶¶ 7-8. These allegations, on their face, plausibly plead use in commerce.

Plaintiffs ask the Court, however, to accept the assertion that defendant's true business is marijuana only, not the non-marijuana products listed on the trademark registration and discussed in the counterclaims, and that the placement of the stickers bearing the "Hotbox Farms" mark on lighters is at most a token use that cannot establish use in commerce. Mot. to Dismiss 6. Plaintiffs argue that because defendant cannot sell marijuana products across state lines, it "printed shoddy stickers" and "slapped them onto" BIC brand lighters to obtain the '602 Registration, but "had no intention of legitimately and legally using the mark in commerce." *Id*. At the motion to dismiss stage, the Court determines whether the

5

pleadings, in this case the counterclaims, are facially plausible, and draws all inferences in favor of the pleader. Plaintiffs ask the Court to weigh competing allegations and make a factual determination about defendant's intent and "true business." This is premature at this stage and, reading all inferences in favor of the non-movant, defendant's counterclaims plausibly allege *bona fide* use in commerce.

Next, plaintiffs argue that because marijuana is a federally-regulated controlled substance (a fact the parties do not dispute), defendant's use of the "Hotbox Farms" mark in relation to marijuana and drug paraphernalia cannot establish trademark rights. Mot. to Dismiss 8. "[O]nly *lawful* use in commerce can give rise to trademark priority." *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (emphasis in original). The Controlled Substances Act defines "drug paraphernalia" to include products intended or designed for use in, amongst other things, "ingesting, inhaling, or otherwise introducing into the human body a controlled substance." 21 U.S.C. § 863(d). The Act contains an exemption for "any item that, in the normal lawful course of business, is . . . traditionally intended for use with tobacco products, including any pipe, paper, or accessory." *Id.* § 863(f)(2).

Plaintiffs acknowledge that a lighter might be considered an exempt item traditionally intended for use with tobacco products but argue that the "misappropriation" of BIC lighters with defendant's sticker, which includes a marijuana leaf, "converts them to drug paraphernalia." Mot. to Dismiss 9. This argument does not address the majority of goods listed in defendant's trademark registration. In addition, the Ninth Circuit recently found that "rolling papers and other smoking accessories such as rolling trays, cigarette tubes, rolling machines, and shredders and grinders" fell under the tobacco exception despite evidence that the registrant "advertises its products for use with cannabis" because the registrant's "intent is irrelevant to the applicability of the exception." *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, No. 22-16190, 2024 WL 1364300, at *2 (9th Cir. Apr. 1, 2024). It is premature, at this stage, to rule that defendant's counterclaims fail as a matter of law based on the disputed issue of whether they should be considered non-exempt drug paraphernalia. As pleaded, and focusing on the traditional use, not intent, the pleadings plausibly allege the valid registration of goods that are not prohibited as drug paraphernalia.

Finally, plaintiffs argue that defendant's '602 Registration is invalid because it was fraudulently obtained. Mot. to Dismiss 9. "'Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application.'" *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed.Cir.1986)). A party may seek cancellation of a trademark registration if it was fraudulently obtained. 15 U.S.C. § 1064(3).

Plaintiffs allege that defendant engaged in willful, bad faith misrepresentations in its application when it placed stickers on lighters and told the USPTO that the "Hotbox Farms" mark was "printed" across the front of each lighter, stated that the stickers served a source-indicating function, and that the Mark was an "identifier of a secondary source." Mot. to Dismiss 10. Even if defendants did engage in fraud in procuring the '602 Registration, plaintiffs have cited only cases permitting a party to bring a cause of action seeking cancellation of the market, not to find it *void ab initio* at the motion to dismiss stage. Regardless, in the face of *prima facie* evidence of a valid trademark registration, and at the motion to dismiss stage, the evidence offered by plaintiffs that specimens were affixed with stickers, rather than printed text, and that defendant represented in its submissions to the USPTO that the stickers served a source-identifying function, is not sufficient to meet the "heavy burden" of demonstrating the fraud. *In re Bose Corp.*, 580 F.3d at 1243. Defendant has sufficiently pleaded that it has a valid and protectible trademark registration.

C.  **Likelihood of Confusion**

Even if the federal trademark registration is valid, plaintiffs argue that defendant failed to plausibly plead a likelihood of confusion about the source of the parties' products. Mot. to Dismiss 11.

Courts assess the likelihood of confusing using eight non-exclusive factors, commonly referred to as the "*Sleekcraft*" factors: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979),

*abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir.2003)). "Likelihood of confusion is typically a question of fact." *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, No. 22-CV-04261-VC, 670 F.Supp.3d 946, 950 (N.D. Cal. Apr. 21, 2023) (citing *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009)).

Defendant is a marijuana dispensary, and plaintiffs sell e-cigarette and nicotine products; plaintiffs argue that these are distinct products with no likelihood of confusion. Mot. to Dismiss 12. Plaintiffs additionally argue that defendant's allegation that it caters to "smokers and vapers" need not be accepted as true because under Oregon law, marijuana dispensaries cannot sell tobacco or nicotine products. *Id.*

In its answer and counterclaims, defendant pleads that it sells marijuana and non-marijuana products; that, like plaintiffs, it sells products at retail locations to "smokers and vapers[;]" that "e-cigarettes and related goods are substantially similar" to defendant's goods, "including at least Defendant's lighters for smokers[;]" that the parties' "swag," which includes stickers, shirts, and sweatshirts, are substantially similar; and that defendant has "expended substantial time, money, and resources marketing, advertising, and promoting" its goods under the "Hotbox Farms" mark. Answer & Countercls., ¶¶ 8, 15, 16-17, 25, 27. These pleadings address multiple *Sleekcraft* factors, including the strength of the mark, the proximity of the goods, and the type of goods and degree of care likely to be taken by a purchaser. Additionally, it is evident from the face of the pleadings that there is similarity between defendant's "Hotbox Farm" marks and plaintiffs' Marks. Plaintiffs' argument that the legality of certain products and the differences between marijuana and e-cigarette and nicotine products defeat the allegations asks for the kind of fact-intensive analysis that is not appropriate at this stage in the proceedings. These allegations, as currently pleaded, are sufficient to plausibly plead a likelihood of confusion.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Dismiss Counterclaims, ECF [44], is DENIED.

IT IS SO ORDERED.

DATED this 30th day of September, 2024.

_____
Adrienne Nelson
United States District Judge