IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIW HOLDINGS LLC and PUFF LABS, LLC,<br><br>　　　　Plaintiffs,<br>　v.<br><br>HOTBOX FARMS LLC and DOES 1-10,<br><br>　　　　Defendants. | Case No.: 3:24-cv-00126-AN<br><br><br>OPINION AND ORDER |

　　　　Plaintiffs TIW Holdings LLC ("TIW") and Puff Labs, LLC ("Puff Labs") brought this action against defendants Hotbox Farms LLC ("Hotbox Farms" or "defendant") and Does 1-10 alleging fraudulent federal trademark registrations in violation of the Lanham Act, 15 U.S.C. § 1120, requesting cancellation of federal trademark registrations pursuant to 15 U.S.C. § 1119, and seeking a declaratory judgment that its marks do not infringe on any of Hotbox Farm's purported marks. Hotbox Farms filed counterclaims alleging federal trademark infringement in violation of 15 U.S.C. § 1114(1), federal unfair competition in violation of 15 U.S.C. § 1125(a), common law trademark infringement, and common law unfair competition, and requests an order directing the United States Patent and Trademark Office ("USPTO") to rectify the register pursuant to 15 U.S.C. § 1119.

　　　　TIW moves to compel defendant to respond to interrogatories. For the reasons stated herein, the motion to compel is GRANTED.

## LEGAL STANDARD

　　　　Federal Rule of Civil Procedure ("FRCP") 33 limits the number of interrogatories that one party may serve on another to "no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). "Broad general interrogatories, such as those that ask an opposing party to "state all facts on which a claim or defense is based" or to 'apply law to facts,' are not permitted." Local R. 33-1(d).

1

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). If a party fails to serve answers to interrogatories properly served under FRCP 33 the court may order sanctions. Fed. R. Civ. P. 33(d)(1)(A). The court may require the failing party to act and the attorney or the party to pay reasonable expenses, including attorney's fees, caused by the failure, and may impose other sanctions permitted by FRCP 37(b)(2)(A). Fed. R. Civ. P. 37(d)(3).

## BACKGROUND

Plaintiffs sell electronic vaporizers and e-liquid products. Compl., ECF [1], ¶¶ 6-7, 11. Puff Labs is a wholesaler, distributor, and retailer that licenses products from TIW. Answer & Countercls., ECF [34], ¶ 19. They allege that that they have used three marks, "Hotbox," "Hotbox 7500," and "Puff Hotbox 7500" (collectively, the "Marks"), since June 2022. *Id.* ¶ 11. TIW filed three pending trademark applications for the Marks on August 17, 2022. *Id.* ¶ 12. The intended goods and services include electronic cigarettes and liquids for use with them, dietary supplements for people and animals, and beauty products, lotions, and creams. *Id.*

Hotbox Farms is a marijuana business operating in Ontario, Oregon, that sells "Oregon-legal cannabis products" and non-cannabis products. Compl. ¶¶ 1, 8; Answer & Countercls. ¶¶ 7-8. Hotbox Farms owns trademark registration no. 7,062,602 (the "'602 Registration") for the trademark "Hotbox Farms" with an intent to use application no. 90284142 (the "'142 Application") filed on October 28, 2020, for use with goods including stickers, insulating sleeve holders for beverage cups, hats, shirts, sweatshirts, buttons, and lighters for smokers. Compl. ¶ 15; Answer & Countercls. ¶ 11.

Plaintiffs allege that defendant's trademark registration was fraudulently obtained and that its use harms plaintiffs' business. Compl. ¶¶ 33-39. In its counterclaims, defendant maintains that it is the lawful holder of the "Hotbox Farms" mark based on its '602 Registration and its continuous use of that mark in commerce beginning between 2016 through 2018, depending on the product. Answer & Countercls. ¶¶ 12-13. Defendant alleges that plaintiffs began using the Marks after defendant's registration, that plaintiffs' goods are similar to defendant's, and that this causes a risk of confusion. Defendant sent a cease-

and-desist letter to plaintiffs on September 8, 2023. Compl. ¶ 2, Ex. A; Answer & Countercls. ¶ 29.

Plaintiffs filed the complaint on September 22, 2023, and defendant responded with counterclaims on February 1, 2024. On February 22, 2024, plaintiffs filed a motion to dismiss the counterclaims. Mot. to Dismiss Countercls., ECF [44]. The Court denied that motion. Op. & Order of September 30, 2024, ECF [57]. On October 4, 2024, TIW filed a motion to compel Hotbox Farms to respond to certain interrogatories. Mot. to Compel Resps. to Interrogs. ("MTC"), ECF [58].

## DISCUSSION

Plaintiffs propounded eighteen numbered interrogatories on defendants relating to the '142 Application. MTC 1; *see* Decl. Jared M. Ahern ("Ahern Decl."), ECF [59], Ex. 3. The '142 Application is for the element "Hotbox Farms" and identifies five goods and/or services: "stickers"; "insulating sleeve holder for beverage cups"; "hats; shirts; sweatshirts"; "buttons"; "lighters for smokers"; and "retail store services featuring hats, shirts, sweatshirts, buttons, stickers, beverage cozies, and lighters." *Id.* at Ex. 2, at 1-2. The interrogatories at issue are as follows:

> "**INTERROGATORY NO. 1.:**
> IDENTIFY all evidence of YOUR intent to use the HFL Mark as of October 28, 2020 on the goods listed in the '142 Application, including any business plans, marketing plans, CONTRACTS with manufacturers, vendors, suppliers, and private label companies that would imprint any mark containing the term 'Hotbox Farms' on the listed goods.
> **INTERROGATORY NO. 2.:**
> IDENTIFY and DESCRIBE all CONTRACTS, both written and oral, between YOU and any PERSON RELATING TO YOUR goods listed in the '142 Application, INCLUDING license agreements, assignment agreements, purchase agreements, manufacturing agreements, distributor agreements, and reseller agreements between 2016 and present.
> **INTERROGATORY NO. 3.:**
> IDENTIFY the geographic scope and volume in units of YOUR sales of Lighters for Smokers affixed with or bearing the HFL Mark, INCLUDING the country, state, and city where YOUR Lighters for Smokers affixed with or bearing the HFL Mark are sold.
> **INTERROGATORY NO. 4.:**
> IDENTIFY all locations—both online and in store—where YOUR Lighters for Smokers affixed with or bearing the term 'HOTBOX FARMS' are sold, INCLUDING third-party retail shops, distributors, and wholesalers.
> **INTERROGATORY NO. 5.:**
> DESCRIBE YOUR advertising and marketing efforts to promote YOUR Lighters for Smokers affixed with or bearing the term 'HOTBOX FARMS,' INCLUDING YOUR annual marketing expenditure or budget between 2016 and 2023.
> **INTERROGATORY NO. 6.:**
> IDENTIFY all evidence, including DOCUMENTS, establishing YOUR date of first use in commerce of the HFL Mark on the goods listed in the '142 Application, INCLUDING

advertisements, purchase invoices, sales invoices, website posts or listings, social media posts or listings, and posts on any online platform.
**INTERROGATORY NO. 7.:**
IDENTIFY and DESCRIBE all efforts predating October 28, 2020, INCLUDING business plans and written price quotations, that evidence YOUR *bona fide* intent to use the HFL Mark on or in connection with each good listed in YOUR '142 Application.
**INTERROGATORY NO. 8.:**
DESCRIBE the facts and circumstances RELATED TO YOUR decision to begin selling YOUR Lighters for Smokers affixed with or bearing the HFL Mark, INCLUDING IDENTIFYING all individuals who advised you to seek registration.
**INTERROGATORY NO. 9.:**
DESCRIBE all steps or actions taken prior to October 28, 2020, to prepare or create the goods listed in the '142 Application to be sold in commerce.
**INTERROGATORY NO. 10.:**
IDENTIFY and DESCRIBE all methods by which YOU, or another PERSON at YOUR direction, emblazoned, printed, placed a sticker, or otherwise applied the HFL Mark to your Lighters for Smokers, INCLUDING the dates such lighters for smokers affixed with or bearing the HFL Mark were sold.
**INTERROGATORY NO. 11.:**
DESCRIBE all goods sold or provided affixed with or bearing the HFL Mark prior to October 22, 2020, INCLUDING the date of first use in commerce and date of first sale for each good and/or service.
**INTERROGATORY NO. 12.:**
IDENTIFY and DESCRIBE the date and circumstances YOU first learned of PUFF's vaporizers sold under the Hotbox Marks.
**INTERROGATORY NO. 13.:**
IDENTIFY the total number of units of YOUR sales of Lighters for Smokers affixed with or bearing the term 'HOTBOX FARMS' on an annual basis from 2016 to present, INCLUDING the location of the sales.
**INTERROGATORY NO. 14.:**
IDENTIFY and DESCRIBE all VAPORIZERS YOU sold, sell, or intend to sell affixed with or bearing the term 'hotbox' between January 2016 to the present.
**INTERROGATORY NO. 15.:**
IDENTIFY and DESCRIBE every Lighters for Smokers that YOU have sold or offered for sale that is only affixed with or bears just the words 'HOTBOX FARMS' without any other graphics, design elements, imagery, or words.
**INTERROGATORY NO. 16.:**
IDENTIFY every social media post YOU made about YOUR Lighters for Smokers affixed with or bearing the term 'HOTBOX FARMS.'
**INTERROGATORY NO. 17.:**
IDENTIFY every one of YOUR advertisements showing YOUR Lighters for Smokers affixed with or bearing the term 'HOTBOX FARMS.'
**INTERROGATORY NO. 18.:**
DESCRIBE YOUR document retention policy, INCLUDING efforts to preserve email, text messages, messages from application-based messaging such as WhatsApp, social media posts, and instore sales records."

*Id.* at Ex. 3, at 6-8.

Defendant responded to Interrogatories 1 through 8 and a portion of Interrogatory 9 but did

not respond to the remainder. Defendant raises two objections to the remaining interrogatories. First, defendant objects on the ground that the interrogatories are too numerous, as questions relating to the "goods" at issue actually refer to five different categories of goods in the '142 Application. Def. Resp., ECF [63], at 1-3.

TIW argues that defendant waived any objection to the interrogatories by failing to specifically object to the first eight interrogatories on the ground that they contain more than one discrete subpart. MTC 7. Some courts have held that a responding party must object on numerosity grounds before responding to any interrogatories to avoid waiver. *See, e.g.*, *IMA N. Am., Inc. v. Marlyn Nutraceuticals, Inc.*, No. CV-06-0344-PHX-LOA, 2007 WL 2391099, at *3 (D. Ariz. Aug. 20, 2007) (quoting *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 492 (W.D.N.C. 1998) (requiring that parties either file a protective order related to a numerosity objection or answer up to the twenty-five interrogatory limit and then object to the remainder)). Other courts have required the responding party to respond to the first twenty-five interrogatories, with no waiver of objection unless they answer additional interrogatories. *See, e.g.*, *Paananen v. Cellco P'ship*, No. C08-1042 RSM, 2009 WL 3327227, at *4 (W.D. Wash. Oct. 8, 2009). This Court agrees that the latter rule is preferable because the former "incentivize[s] litigants to file protective orders in every case before responding to a single interrogatory." *Id.* Accordingly, the Court finds that defendant did not waive numerosity objections by responding to what it considered the first twenty-five interrogatories before objecting to the rest.

The parties dispute the number of interrogatories included in the request. As the parties note in their briefing, there is considerable disagreement as to what constitutes a "discrete subpart" for purposes of determining the number of interrogatories. The thorough survey in *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191 (E.D. Tex. 2016), is instructive. The court first explained that the number of separately enumerated subparts does not determine whether an interrogatory contains discrete subparts. *Erfindergemeinschaft Uropep GbR*, 315 F.R.D. at 195. Instead, courts have applied different tests. One is the "discrete bits of information" test, which the court found "too exacting." *Id.* Another asks "whether a subpart or an interrogatory 'introduces a line of inquiry that is separate and distinct

5


from the inquiry made by the portion of the interrogatory that precedes it.'" *Id.* (quoting *Ott v. Mortg. Invs. Corp. of Ohio, Inc.*, No. 3:14-cv-645-ST, 2015 WL 691643, at *1 (D. Or. Feb. 17, 2015)). "[I]t would appear that an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2168.1, at 39-40 (2010), which the *Erfindergemeinschaft Uropep GbR* court referred to as the "common theme" standard, 315 F.R.D. at 195. The court noted that this test was vague because the question of "breadth" and "common theme" imposed very little limit depending on interpretation. *Id*.

Finally, the court settled on what it determined was the most used test, the "related question" approach. *Id.* at 196 (collecting cases). Under that test, "'subparts that are logically or factually subsumed within and necessarily related to the primary question' should not be treated as separate interrogatories." *Id.* (quoting *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 686 (D. Nev. 1997)). Another way to phrase the test is "'where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it].'" *Id.* (quoting *Fed. Trade Comm'n v. Think All Publ'g, L.L.C.*, No. 4:07-cv-011, 2008 WL 687455, at *1 (E.D. Tex. Mar. 11, 2008)). Some courts take a pragmatic approach to this test by considering if the interrogatories thwart the purpose of FRCP 33(a)(1)'s twenty-five interrogatory limit while giving "reasonable latitude in formulating an inquiry to elicit as complete an answer as possible." *Id.* at 197.

TIW argues that each of the twenty-five interrogatories only includes one discrete subpart. MTC 8. According to TIW, each interrogatory inquires primarily about the intended use of the trademark, which happens to include and subsume all categories of goods. *Id.* TIW notes that defendant raised a similar argument in defense of its own interrogatories and that TIW ultimately stipulated to respond to the interrogatories despite objections. *Id.* at 4; *see* Ahern Decl. Ex. 1, at 10. It argues that in fairness, and because the interrogatories are clear, straightforward, and not particularly onerous to answer, defendant should be compelled to respond. MTC 9.

Defendant maintains that the interrogatories constitute sixty-three individual interrogatories because each of the five types of goods should constitute a discrete subpart of each parent question. Def. Resp. 3. Defendant argues that the interrogatories at issue should be treated similarly to interrogatories directed to multiple accused products in patent lawsuits, which are generally treated as discrete subparts. *Id.* at 5-6 (citing *Collaboration Props., Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D. Cal. 2004) (finding that individually-numbered interrogatories contained discrete subparts when asking about accused subparts); *Rambus Inc. v. NVIDIA Corp.*, No. C-08-03343 SI, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011) (treating interrogatories seeking information about 300 different accused products as 300 distinct interrogatories); *Stamps.Com, Inc. v. Endicia, Inc.*, No. CV 06-7499-ODW (CTx), 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) (finding that "interrogatories seeking facts relating to separate patents or separate accused products seek information concerning distinct subjects and, therefore, constitute separate interrogatories").

Courts presiding over patent matters do not always find, however, that interrogatories addressing multiple accused products constitute multiple discrete subparts. In *Synopsys, Inc. v. ATopTech, Inc.*, the court addressed interrogatories aimed at a "single accused product" with many "different versions." 319 F.R.D. 293, 295 (N.D. Cal. 2016). The court found that, because "all versions of the [product] are substantially similar with respect to the accused functionalities and infringe the above-listed claims in substantially the same way," interrogatories asking for information about all products should be considered a single interrogatory. *Id.* (internal quotation marks and citation omitted).

In the cases cited by defendant, the primary objective of the interrogatories at issue was to obtain information about the accused products themselves. Here, however, the primary focus of the interrogatories at issue is the use of or intent to use the trademark, not the goods themselves. Accordingly, the interrogatories at issue here are more akin to those in *Synopsys, Inc.* Accordingly, defendant's objections regarding numerosity that relate to the number of goods are unavailing.

Separately, defendant objects to Interrogatories 10, 13, and 18 on the basis that each contains multiple inquiries. Def. Resp. 8-9. The Court reprints those interrogatories here for ease of

7

reading:

> **INTERROGATORY NO. 10.:**
> IDENTIFY and DESCRIBE all methods by which YOU, or another PERSON at YOUR direction, emblazoned, printed, placed a sticker, or otherwise applied the HFL Mark to your Lighters for Smokers, INCLUDING the dates such lighters for smokers affixed with or bearing the HFL Mark were sold.
> **INTERROGATORY NO. 13.:**
> IDENTIFY the total number of units of YOUR sales of Lighters for Smokers affixed with or bearing the term 'HOTBOX FARMS' on an annual basis from 2016 to present, INCLUDING the location of the sales.
> **INTERROGATORY NO. 18.:**
> DESCRIBE YOUR document retention policy, INCLUDING efforts to preserve email, text messages, messages from application-based messaging such as WhatsApp, social media posts, and instore sales records."

Defendant argues that Interrogatory 10 contains two inquiries: "1) the methods by which HFL's trademark was applied to its lighters, and 2) the dates HFL's lighters were sold." *Id.* at 8. The Court agrees and finds that Interrogatory 10 has two discrete subparts. Defendant argues that Interrogatory 13 similarly contains two inquiries: "1) annual sales of HOTBOX FARMS lighters, and 2) location of sales of HOTBOX FARMS lighters." *Id.* at 8-9. Here, too, the annual sales and location of sales are separate inquiries that constitute discrete subparts. Finally, defendant argues that Interrogatory 18 contains two separate inquiries: "1) a description of HFL's document retention policy, and 2) a description of HFL's document preservation efforts." *Id.* at 9. Here, the Court finds that the description of preservation efforts is subsumed within the general inquiry about defendant's document retention policy, which would include preservation practices. In sum, Interrogatories 10, 13, and 18 constitute five discrete subparts. Even with these discrete subparts, however, TIW's interrogatories do not surpass the twenty-five-interrogatory limit.

## CONCLUSION

For the foregoing reasons, plaintiff TIW Holdings LLC's Motion to Compel, ECF [58], is GRANTED.

IT IS SO ORDERED.

DATED this 15th day of April, 2025.

Adrienne Nelson
United States District Judge